# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **FRANK P.,** | * | |
| **Plaintiff,** | * | |
| vs. | * | Civil Action No. ADC-18-2342 |
| **COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**[1] | * | |
| **Defendant.** | * | |

## MEMORANDUM OPINION

On July 31, 2018, Frank P. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claim for Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and the parties' cross-motions for summary judgment (ECF Nos. 13, 14), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 13) and Defendant's Motion for Summary Judgment (ECF No. 14) are DENIED, the decision of the SSA is REVERSED IN PART, and the case is REMANDED to the SSA for further analysis in accordance with this opinion.

### PROCEDURAL HISTORY

On February 29, 2016, Plaintiff filed a Title XVI application for SSI, alleging disability beginning on June 30, 2014. His claim was denied initially and upon reconsideration on July 11,

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner of Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

1

2016 and November 18, 2016, respectively. Subsequently, on December 1, 2016, Plaintiff filed a written request for a hearing and, on October 12, 2017, an Administrative Law Judge ("ALJ") presided over a video hearing. On December 1, 2017, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act [(the "Act")], since February 29, 2016, the date the application was filed." ECF No. 10-3 at 31. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on June 11, 2018, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the SSA. *See* 20 C.F.R. § 416.1481 (2018); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On July 31, 2018, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of his disability application. On January 28, 2019, Plaintiff filed a Motion for Summary Judgment, and Defendant filed a Motion for Summary Judgment on February 25, 2019. Plaintiff did not respond to Defendant's motion and the time to do so has since passed.[2] This matter is now fully briefed and the Court has reviewed both parties' motions.

## STANDARD OF REVIEW

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ,

---

[2] On April 30, 2019, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

2

not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the [SSA]'s finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal citations and quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations and quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for SSI, a claimant must establish that he is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability

3

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant shall be determined to be under disability where "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve

months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R.

§ 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *2–13 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for his symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *6–8.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since February 29, 2016, the application date. ECF No. 10-3 at 18. At step two, the ALJ found that Plaintiff had the severe impairments of "left ankle avascular necrosis, history of myocardial infarction/coronary artery disease, depressive disorder, and adjustment disorder." *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 20. At step four, the ALJ determined that Plaintiff had the RFC:

> to perform medium work as defined in 20 CFR 416.967(c), such that he is limited in the workplace to lifting no more than 50 pounds occasionally and 25 pounds frequently, standing and walking for about six hours, and sitting for up to six hours in an eight-hour workday with normal breaks. [Plaintiff] needs to occasionally avoid exposure to extreme cold and extreme heat. He is limited to short and simple instructions and tasks in a routine work setting. "Occasional" is defined as one-third of an eight-hour workday and "frequent" is defined as two-thirds of an eight-hour workday.

*Id.* at 23. The ALJ then determined that Plaintiff had no past relevant work. *Id.* at 30. Finally, at step five, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* Thus, the ALJ concluded that Plaintiff "ha[d] not been under a disability, as defined in the [Act], since February 29, 2016, the date the application was filed." *Id.* at 31.

## DISCUSSION

Plaintiff raises two allegations of error on appeal: (1) that the ALJ's physical RFC finding is not supported by substantial evidence because the ALJ failed to properly evaluate Plaintiff's ankle impairment; and (2) that the ALJ improperly accounted for Plaintiff's moderate difficulties

in concentration, persistence, or pace in the RFC finding. The Court agrees with Plaintiff's second argument, but the first argument lacks merit. Each alleged error is addressed below.

### A. The ALJ Erred At Step Four Of The Sequential Evaluation.

Both of Plaintiff's allegations relate to the ALJ's RFC determination. In determining RFC specifically, an ALJ must take into account the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds. 20 C.F.R. §§ 404.1545(a), 416.945(a) (ordering the ALJ to consider the entire record); SSR 96-8p, 1996 WL 374184, at *2 (defining the RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities). Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

Social Security Ruling ("SSR") 96-8p provides the proper framework for evaluating a claimant's RFC. Specifically, the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted). Furthermore, "[t]he Ruling instructs that the [RFC] 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations. Only after that may [the RFC] be expressed in terms of the exertional

8

levels of work[:] sedentary, light, medium, heavy, and very heavy." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (footnote omitted) (quoting SSR 96-8p, 1996 WL 374184).

1. The ALJ Properly Evaluated Plaintiff's Ankle Impairment And The Physical RFC Finding Is Supported By Substantial Evidence.

Plaintiff first contends that the ALJ failed to properly evaluate Plaintiff's left ankle impairment or explain how the impairment could impact the physical RFC finding. ECF No. 13-1 at 5. The Court disagrees.

At step four, the ALJ articulated his rationale that Plaintiff could perform medium work in a detailed narrative. ECF No. 10-3 at 23–30. In the narrative, the ALJ specifically addressed Plaintiff's ankle impairment:

> A review of the medical records shows [Plaintiff] reported left ankle pain and swelling in June 2016, which began two months prior. [Plaintiff] was prescribed a pneumatic walker boot and obtained podiatric treatment. A magnetic resonance imaging (MRI) scan of his left ankle showed evidence of posterior ankle impingement, edema, an ankle joint effusion, osteonecrosis of the talar dome, and degenerative changes of joints. Upon examination, mild pes planus deformity without hindfoot valgus was noted, and he had a "mildly antalgic gait." Additionally, mild swelling was noted over the lateral aspect of his ankle, sensation was intact, and stiffness and tenderness to palpitation were noted. An imaging study of his left ankle revealed sclerosing of the talar dome, symmetric joint space within his ankle joint, and no fractures. He was diagnosed with left ankle and foot pain as well as avascular necrosis of the left talus. Conservative treatment, including ankle bracing, icepack compression, and oral anti-inflammatories was proposed.
>
> As of October 2016, [Plaintiff] reported worsening ankle pain, but the physical examination indicated he had a mildly antalgic gait, mild swelling in his ankle, intact sensation, and full muscle strength with some tenderness to palpitation. Imaging studies again showed sclerosis of the talar dome without fractures or arthritis. From October 2016 through January 2017, physical examinations indicated [Plaintiff] had a normal gait. A functional evaluation was conducted in March 2017, and it was observed that [Plaintiff] was able to reach items at a height of six feet, stoop to retrieve items from the floor, lift 20 pounds from floor to countertop height, and

> walk unassisted, and his balance appeared to be intact. One month later, a physical examination was unremarkable and revealed [Plaintiff] had a normal gait and station, normal range of motion and strength, and no joint enlargement or tenderness. Thereafter, physical examinations continued to show [Plaintiff] had normal station and gait, and there is no evidence he obtained continued treatment for left ankle pain.

*Id.* at 25 (internal record citations omitted).

Here, the ALJ properly considered Plaintiff's ankle impairment and cited to substantial evidence in the record to support his physical RFC finding. The ALJ acknowledged that imaging of Plaintiff's ankle evidenced osteonecrosis of the talar dome, but he observed that only "[c]onservative treatment" was proposed. *Id.* The ALJ also noted that Plaintiff exhibited only mild swelling with a "mildly antalgic gait" and, in later examinations, demonstrated intact sensation, full muscle strength, normal gait and station, and normal range of motion. *Id.* While the ALJ incorrectly stated that there was no acceptable imaging of Plaintiff's left ankle at step three, *id.* at 20, the ALJ specifically discussed the MRI report of Plaintiff's left ankle in his narrative discussion, rendering any error harmless. Furthermore, the lack of medical guidance from the state agency medical consultants or consultative examiners regarding Plaintiff's ankle impairment does not warrant remand. *See* ECF No. 13-1 at 5. Although the imaging of Plaintiff's left ankle was not included in the record at the initial or reconsideration levels, the ALJ explicitly considered it in determining Plaintiff's physical RFC and the responsibility for determining RFC lies with the ALJ. 20 C.F.R. § 416.946(c). Accordingly, the Court finds that the ALJ properly evaluated Plaintiff's ankle impairment and his physical RFC was supported by substantial evidence.

2. The ALJ's RFC Determination Improperly Accounted For Plaintiff's Moderate Difficulties With Concentration, Persistence, Or Pace.

Plaintiff next contends that the ALJ's RFC assessment failed to adequately account for his moderate difficulties in concentration, persistence, or pace, in violation of *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). ECF No. 13-1 at 6. Specifically, Plaintiff argues that the ALJ did not include a limitation to account for Plaintiff's moderate difficulties by merely stating that Plaintiff "is limited to short and simple instructions and tasks in a routine work setting" and that the ALJ failed to explain why including a limitation was unnecessary. *Id.* The Court agrees.

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairments meet or equal one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Listings 12.00 *et seq.* pertain to mental impairments. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00. "Each [L]isting therein, consists of: (1) a brief statement describing its subject disorder; (2) 'paragraph A criteria,' which consists of a set of medical findings; and (3) 'paragraph B criteria,' which consists of a set of impairment-related functional limitations." *Rayman v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-3102, 2015 WL 6870053, at *2 (D.Md. Nov. 6, 2015) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)). If the paragraph A and paragraph B criteria are satisfied, the ALJ will find that the claimant meets the listed impairment. *Id.*

Paragraph B provides the functional criteria assessed by the ALJ and consists of four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)(2)(b). The ALJ employs a "special technique" to rate the degree of a claimant's functional limitations in these areas. 20 C.F.R. §§ 404.1520a(b), 416.920a(b). The ALJ's evaluation must determine "the extent to which [the claimant's] impairment(s) interferes with [the] ability to function independently, appropriately, effectively, and on a sustained basis" and must

11

include a specific finding as to the degree of limitation in each of the four functional areas. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). The ALJ uses a five-point scale to rate a claimant's degree of limitation: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). "To satisfy the paragraph B criteria, [a claimant's] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)(2)(b).

The functional area of concentration, persistence, or pace "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(E)(3). According to the regulations, examples of the ability to focus attention and stay on task include:

> Initiating and performing a task that [the claimant] understand[s] and know[s] how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

*Id.*

In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. 780 F.3d at 638. Specifically, the Fourth Circuit recognized a difference between the ability to perform simple tasks and the ability to stay on task, stating that the latter ability concerns the broad functional area of concentration, persistence, or pace. *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in

12

concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*; *see also Carr v. Colvin*, No. TMD 15-685, 2016 WL 4662341, at *10 (D.Md. Sept. 7, 2016) (remanding for the ALJ to "determine on a function-by-function basis how Plaintiff's impairments affect his ability to work for a full workday").

Here, the ALJ's assessment did not properly account for Plaintiff's difficulties in concentration, persistence, or pace. At step three, the ALJ determined that "[w]ith regard to concentrating, persisting, or maintaining pace, [Plaintiff] has a moderate limitation," and further explained that:

> [Plaintiff] stated he is able to pay bills, count change, handle a savings account, and use a checkbook/money orders. He noted his hobbies include reading and watching television, which require some degree of concentration. [Plaintiff] indicated he is able to pay attention for a couple of hours "unless he is reading a story, then about 30 minutes." He indicated he is able to finish things he starts, follow written instructions, although he re-reads them several times, and follow spoken instructions "pretty well." However, [Plaintiff] also stated he has difficulty concentrating for long periods and difficulty with memory. Moreover, in a subsequent function report, [Plaintiff] indicated he had difficulty following spoken instructions due to a "memory problem and concentration problems." Per a consultative examination, [Plaintiff] denied delusions or hallucinations as well as post or current suicidal or homicidal ideation. However, he demonstrated "very good memory functions," was able to recall three out of three objects in five minutes, performed a digit span forward and backward, and had good remote memory. Further, [Plaintiff] exhibited good concentration, was able to do serial threes and sevens, and was able to spell "world" forward and backward. [Plaintiff] reported he was "trying to enhance his computer skills and enjoys reading." Accordingly, in light of [Plaintiff]'s reported memory difficulties, I find [Plaintiff] has a moderate limitation in this area of functioning.

ECF No. 10-3 at 22 (internal record citations omitted).

The ALJ then limited Plaintiff's RFC, in pertinent part, stating that Plaintiff "is limited to short and simple instructions and tasks in a routine work setting." *Id.* at 23. "This Court has been clear that a restriction to 'simple tasks' or some variation on that phrase does not meet the requirement [set forth in *Mascio*.]" *Capps v. Berryhill*, No. CBD-17-2438, 2018 WL 4616018, at *5 (D.Md. Sept. 26, 2018). Thus, unless the ALJ adequately explained why Plaintiff's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the RFC, remand is warranted.

Defendant contends that the ALJ complied with *Mascio* by explaining why Plaintiff's difficulties did not translate into a limitation in the RFC. ECF No. 14-1 at 8–14. While the ALJ engaged in a thorough analysis of Plaintiff's mental impairments at steps three and four, "[m]ost of the evidence discussed . . . in fact suggests no limitation at all." *Bradford v. Comm'r, Soc. Sec.*, No. WMN-14-2016, 2015 WL 1919643, at *3 (D.Md. Apr. 27, 2015) (remanding case where the ALJ's assessment lacked sufficient explanation of why the claimant had moderate limitations in concentration, persistence, or pace).

At step three, for example, the ALJ stated that Plaintiff "indicated he is able to pay attention for a couple of hours 'unless he is reading a story, then about 30 minutes,'" "is able to finish things he starts, follow written instructions, . . . and follow spoken instructions 'pretty well,'" "exhibited good concentration, was able to do serial threes and sevens, and was able to spell 'world' forward and backward," and had hobbies such as reading and watching television, "which require some degree of concentration." ECF No. 10-3 at 22 (internal record citations omitted). At step four, the ALJ observed that Plaintiff's mental status examinations throughout 2016 "indicated [Plaintiff] was alert, had intact attention, memory, and concentration, average intellect, described current events and proverbs aptly, and 'easily performed serial sevens'" and that Plaintiff was "fully

14

oriented and continued to exhibit intact attention, concentration, and memory as well as good insight and judgment." *Id.* at 26 (internal record citations omitted). The ALJ also noted that, despite Plaintiff's reports of difficulty focusing, remembering, and concentrating, "treatment notes indicated [his] mood was within normal limits, he had an appropriate affect, and he exhibited normal speech, organized thought process, fair insight, judgment, and impulse control, and full orientation" and mental status examinations throughout 2017 "indicated [Plaintiff] was alert, had normal speech, and he displayed organized, coherent, intact attention, concentration, and memory, good judgment and insight, and logical thought processes." *Id.* (internal record citations omitted).

The analysis at issue here is unlike that upheld in *Dean v. Commissioner, Social Security Administration*, in which the ALJ provided a clear explanation of the reasoning for assessing a moderate limitation in concentration, persistence, or pace as well as a clear explanation of why, despite the moderate limitation, the claimant would not have issues persisting in a given task. No. SAG-14-1127, 2015 WL 1431548, at *1–2 (D.Md. Mar. 26, 2015). Here, the ALJ explained that he found moderate difficulties "in light of [Plaintiff]'s reported memory difficulties," but such a finding appears contrary to the overwhelming amount of evidence the ALJ cited suggesting Plaintiff's memory, concentration, and attention was intact during the relevant period. Furthermore, the ALJ did not provide an explanation of why, despite the moderate limitation, Plaintiff would be able to carry out vocational tasks. "Without understanding why the ALJ believed [Plaintiff] to have a moderate limitation in concentration, persistence, or pace, as opposed to a mild limitation or no limitation, the Court cannot ascertain whether the moderate limitation found by the ALJ would warrant any RFC restrictions in [Plaintiff]'s ability to perform or sustain even unskilled work." *Bradford*, 2015 WL 1919643, at *3. Accordingly, this Court must remand the case to the SSA for further consideration of Plaintiff's level of limitation in the area of

concentration, persistence, or pace. If the ALJ again finds that a moderate limitation is appropriate, the ALJ must explain the reasons for that finding in a manner consistent with *Mascio*.

## CONCLUSION

In summation, the Court finds that the ALJ improperly found that Plaintiff was "not disabled" within the meaning of the Act from February 29, 2016 through the date of the ALJ's decision. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 13) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 14) is DENIED, and the decision of the SSA is REMANDED for further proceedings in accordance with this opinion. In so holding, the Court expresses no opinion as to the ALJ's ultimate disability determination. The clerk is directed to CLOSE this case.

Date: 16 May 2019

A. David Copperthite
United States Magistrate Judge